UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20566-CIV-MORENO

JOSE ANTONIO CHECA CURI,

    Plaintiff,

vs.

PERSHING LLC,

    Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

In mid-2007, the Plaintiff met two individuals that promised him a 13% fixed return, with no risk, if the Plaintiff would allow them to manage his investment funds. Compl. ¶ 12. The Plaintiff found this offer too enticing to resist. According to the complaint, he agreed to transfer his funds to their control "by opening an account with Defendant Pershing" as well as two other "investment advisory firms," Aleph Consulting Group and Atlantic International Capital LLC. Compl. ¶ 13. Pershing acted as the clearing firm for the Plaintiff's funds which were then invested by these two other advisory firms. Compl. ¶ 1. The other investment firms were not named as parties to this complaint because, according to the complaint, each of them has "ceased its operations and its principals have fled" the country. Compl. ¶¶ 9-11. From mid-2007 to the end of 2010, the Plaintiff transferred approximately $9 million into his account with the Defendant. Compl. ¶¶ 18, 24.

At the time the complaint was filed, the details of Plaintiff's account with Pershing were unknown because, as stated in the complaint, the plaintiff "never received any documents or literature from Defendant Pershing detailing the parameters of his relationship with Defendant Pershing, and no representative of Defendant Pershing ever telephoned him to disclose Pershing's

duties and responsibilities to him." Compl. ¶ 17. Despite this lack of disclosure, the plaintiff "was confident that Defendant Pershing would fulfill its responsibilities" which the plaintiff believed to be the responsibility "to safeguard his funds and investments." *Id.* According to the complaint, after he opened his account with Pershing, the Plaintiff "received statements and other account-related documents periodically that appeared to be from Defendant Pershing "showing what the Plaintiff "believed to be his accurate account balance" and that he "was receiving interest payments consistent with the returns" that he had been promised by the two individuals. Compl. ¶ 14.

The Plaintiff became suspicious about the activity of his account with the Defendant in early 2010 based on two separate events. First, the Plaintiff received a letter stating that he would begin to receive interest payments in his account every ninety days instead of every thirty days as had been the normal schedule. Compl. ¶ 30. The complaint does not identify the sender of this letter. Second, the Plaintiff received a second letter appearing to be from the Securities and Exchange Commission and the Internal Revenue Service claiming that the Plaintiff had to pay taxes to the United States government on $3 million in interest he had earned. *Id.* The plaintiff then began to inquire into his account and in October 2010 he obtained his "genuine account statements" from the Defendant which documented the occurrence of ninety wire transfers between September 2007 and November 2010 from his account to third parties. Compl. ¶¶ 18, 32. The Defendant had also charged a wire transfer fee to the Plaintiff's account for each of these transfers. Compl. ¶ 23. The sum total of these wire transfers was approximately $6 million of the $9 million which the Plaintiff had placed in his account with the Defendant. Compl. ¶ 24.

The complaint further alleges that the Plaintiff had been unaware of these wire transfers because the Defendant had been sending his account statements to an entity called International Financial Center & Exchange N.V. in the Netherlands Antilles, even though the Defendant knew the

Plaintiff lived in Mexico. Compl. ¶¶ 16, 19, 32. The complaint alleges that the Plaintiff's account had been associated with this entity without the Plaintiff's knowledge or authority. Compl. ¶¶ 19, 20-21. As to the delivery of the account statements, the Plaintiff alleges that the Defendant was aware that he was not receiving them and that no representative of the Defendant ever contacted him to ensure that he was willing to accept delivery of his statements to an address in the Netherlands Antilles. Compl. ¶¶ 20-21. The complaint alleges that the Defendant purposefully sent the account statements to this address in order to conceal its fraudulent and unauthorized transfers from the Plaintiff's account. Compl. ¶¶ 16, 19, 32. The six-count complaint pleads claims for (1) breach of contract, (2) breach of fiduciary duty, (3) negligence, (4) unjust enrichment, (5) aiding and abetting breach of fiduciary duty, and (6) aiding and abetting common law fraud. The Plaintiff pleads damages of $6 million and seeks punitive damages against the Defendant.

## Legal Analysis

For the reasons stated below, the Court find that the Complaint states a claim for breach of contract, but that the remaining claims are barred by Florida's economic loss rule.

### I. Standard for a Motion to Dismiss

A court will not grant a motion to dismiss unless the plaintiff fails to allege any facts that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well-pleaded facts as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 953 (11th Cir. 1986). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). A complaint must have "enough facts to state a claim to relief that is plausible on its face"; if it does not "nudge[] the[] claims across the line from conceivable to plausible, [it] must be dismissed." *Id.* at 1974.

## II. The Complaint States a Claim for Breach of Contract

To state a cause of action for breach of contract under Florida law, a plaintiff must allege the existence of a valid contract, a material breach of the terms of that contract, and resulting damages. *Merin Hunter Codman, Inc. v. Wackenhut Corr. Corp.*, 941 So. 2d 396, 298 (Fla. 4th DCA 2006); *Abbott Lab. Inc. v. Gen. Elec. Capital*, 765 So. 2d 737 (Fla. 5th DCA 2000). The complaint alleges that the Defendant had the duty to "safeguard" Plaintiff's funds and that the Defendant's processing of the ninety transfers constituted a breach of this duty. Compl. ¶ 33.

Defendant notes that the complaint does not identify any specific provisions in any agreement between the parties that establish this duty and the complaint did not attach a copy of the contract between the parties that was referenced throughout the complaint. However, a Plaintiff is not required to attach a contract to its complaint in order to state a breach of contract claim. *See Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *2 (S.D. Fla. Mar. 7, 2008). "Under Florida law, '[i]t is elementary that in order to recover on a claim for breach of contract the burden is upon the claimant to prove by a preponderance of the evidence the existence of a contract, a breach thereof and damages flowing from the breach.'" *Id.* (quoting *North Am. Clearing, Inc. v. Brokerage Computer Sys. Inc.*, 2008 WL 341309, at *2 (M.D. Fla. Feb.5, 2008)). Moreover, the Defendant does not contest the existence of a contract between the parties, but only disputes the Plaintiff's interpretation of the contractual terms. Accepting the Plaintiff's facts as true, the Court finds that the

Plaintiff has stated facts that establish a plausible breach of contract claim arising from the Defendant's performance of the wire transfers.

### III. Florida's Economic Loss Rule Bars The Five Remaining Tort Claims

The Defendant argues that Florida's economic loss rule provides a compelling reason for dismissing the remainder of Plaintiff's tort claims. "The economic loss rule bars recovery in tort where the act 'complained of relates to the performance of the contract.'" *Tyco Safety Prod. Canada, Ltd. v. Abracon Corp.*, 2008 WL 4753728, at *2 (S.D. Fla. 2008) (quoting *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. 4th DCA 2000)). In *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 537 (Fla. 2004), the Florida Supreme Court confirmed that the economic loss rule applies to service contracts and that a plaintiff may only maintain a tort claim based on conduct independent of the claim for breach of contract. "[A] tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 536. Tort claims that are not independent of a breach of contract claim and are instead "inextricably intertwined" with claims arising from the contract are often dismissed by federal courts in Florida. *See, Targia v. U.S. Alliance Mgmt. Corp.*, 2003 WL 23312749, at *2 (S.D. Fla. Nov. 14, 2003)(dismissing breach of fiduciary duty based on Florida's economic loss rule).

Plaintiff's remaining claims are tort claims based on the same facts that support his breach of contract claim: the Defendant's alleged breach of duty and its processing of the 90 transfers. Counts Two of the complaint pleads that the Defendant "maintained a fiduciary position of trust" and "failed to reasonably safeguard [his] funds." Compl. ¶¶ 38-39. Count Three pleads that the Defendant "had an expressly agreed-upon duty to reasonably safeguard [the Plaintiff's] funds and securities" and failed to do so. Compl. ¶¶ 42-43. Counts Four, Five, and Six plead that the Defendant "effectuate[d] fraudulent transfers of funds and securities" out of the Plaintiff's account. Compl. ¶¶ 47, 50, 53.

These claims impermissibly seek to recover the same economic damages, $6 million, as the breach of contract claim. *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 494 (Fla. 3rd DCA 1994)("[w]here damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."). The complaint does not ground these five remaining tort claims in facts that are independent of acts supporting the Plaintiff's breach of contract claim. Accordingly, the remaining five claims should be dismissed under Florida's economic loss rule.

### Conclusion

THIS CAUSE came before the Court upon the Defendant's Motion to Dismiss **(D.E. No. 13)**, filed on **March 21, 2012**.

THE COURT has considered the motion and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED IN PART. All claims in the complaint are dismissed except for Plaintiff's breach of contract claim. The Defendant's answer to Plaintiff's breach of contract claim is due by **August 24, 2012**.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of July, 2012.

FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record